The Trustees of the Theological Seminary of Auburn, *vs.* Almeron H. Cole, adm'r of Chloe Hyde, deceased, and John Kellogg, George F. Leitch and David A. Comstock, ex'rs of Daniel Kellogg, deceased.

A testator, after giving several legacies to various persons, devised as follows: " I give, devise and bequeath all the rest and residue of my estate, both real and personal, which shall remain after payment of my debts, funeral charges and legacies above mentioned, unto my daughter C. H., her heirs and assigns forever; and if she should die without lawful issue, then I give and bequeath unto ' The Theological Seminary of Auburn' the sum of ten thousand dollars, for the purpose of endowing a professorship in said seminary, to. be paid to the said trustees in four equal annual payments, after the death of the said C." The testator then gave the custody, tuition and guardianship of C. to K. until she should attain the age of twenty-one years; and all or such parts of the estate as K. should deem necessary, were directed to be applied for her maintenance, education and support.

*Held,* 1. That the testator intended the legacy should vest in the theological seminary upon the death of his daughter without issue living at the time of her death. That the fair and only reasonable construction of the language used was that the gift was to be perfect at C.'s death, provided no issue of her's should then be living; and that it was to be absolute before the times of payment should begin to run.

2. That the legacy was not invalid because it was a limitation over of a part only of the estate devised and bequeathed to the daughter, leaving the former estate, as to the residue, to continue.

3. That the will did not admit of the construction that the testator intended to vest in his daughter the whole estate given to her, absolutely. That as to the amount of the legacy to the theological seminary he intended that she should have only the use, unless she should have issue living at her death, and that if she should not have such issue, the same should go to the seminary. And that the clause directing that all or such part of the testator's estate as her guardian should deem necessary should be applied for her maintenance, education and support, did not disprove that intention; nor was it so incompatible with the gift to the seminary that the latter could not be supported.

4. That it was not a case of conflicting intentions or dispositions, one of which must fail for that reason.

In an action brought by the theological seminary after the death of C. without issue, and after the death of K., her guardian, to recover the legacy of $10,000, it appearing that K., at the time of his death, held the fund out of which the legacy was payable, as guardian of C., after which it passed to, and continued in, the possession of his executors; *Held* that K.'s executors were properly joined as co-defendants, with the administrator of C.

The Theological Seminary of Auburn has ample legal capacity to take a bequest made for the purpose of endowing a professorship therein.

THIS was an appeal, by the defendants, from a decision made at a special term, overruling the demurrers of the defendants to the complaint. The complaint stated that the plaintiffs, by an act of the legislature, passed April 14, 1820, were created a body corporate and politic, with all the general powers and privileges attending the same, and that they have ever since possessed, exercised and enjoyed the rights, powers and privileges arising from or connected with the said act of incorporation. The plaintiffs further stated that David Hyde, late of Auburn, on or about the 10th day of April, in the year 1824, made and published his last will and testament, bearing date on that day; and that he died during the same month of April, without having revoked or in any manner altered his said will. That said will, after giving several small legacies and annuities to various persons, contained the following clauses:

" I give, devise and bequeath all the rest and residue of my estate, both real and personal, which shall remain after payment of my debts, funeral charges and legacies above mentioned, unto my daughter Chloe Hyde, her heirs and assigns forever; and if she should die without lawful issue, then I give and bequeath unto the trustees of the Theological Seminary of Auburn, in the

state of New-York, the sum of ten thousand dollars, for the purpose of endowing a professorship in said seminary, to be paid to the said trustees in four equal annual payments after the death of said Chloe. I give the custody, tuition and guardianship of the person of my said daughter Chloe to my brother-in-law, Daniel Kellogg, Esquire, until she shall attain the age of twenty-one years, and all or such part of my said estate as he shall deem necessary, shall be applied for her maintenance, education and support."

The testator then appointed the said Daniel Kellogg executor of his will, with power to sell and convey such portions of his real estate as the testator had contracted to sell, with one exception.

And the plaintiffs further alleged that the said will was duly proved and admitted to probate by the surrogate of the county of Cayuga, and letters testamentary were granted thereon by the surrogate to the said Daniel Kellogg, on or about the 17th day of May, 1824, and that the said Daniel Kellogg took upon himself the duties of executor of said will, and received of the personal estate of the deceased a large sum of money, to wit, the sum of $30,000, subject to the directions contained in said last will and testament. That the said David Hyde left at his decease, surviving him, Chloe Hyde, his daughter and only child, who was the residuary legatee mentioned in the clause of said will hereinbefore recited. That the said Daniel Kellogg, on or about the 5th day of September, 1834, made and published his last will and testament, and afterwards, and on or about the month of May, in the year 1836, departed this life; that in and by said will the said Kellogg nominated and appointed John Kellogg, George F. Leitch and David A. Comstock, the executors thereof; that said executors proved said will, and letters testamentary were issued thereon to them by the surrogate of the county of Onondaga, and that they took upon themselves the duties of said appointments. That the said Daniel Kellogg, after his appointment as aforesaid, as executor of the last will of the said David Hyde, deceased, continued to retain in his hands, and to manage and control, the funds received by him as aforesaid, as executor during his lifetime; that at his death and

on the appointment of the executors of his will as aforesaid, the said fund, with its increase, came into the possession and under the control and management of the executors of the said Daniel Kellogg, deceased, and so continued in their possession, management and control, until the death of the said Chloe Hyde, as hereinafter stated. That the said Chloe Hyde died without lawful issue, on or about the 21st day of May, in the year 1850 ; that she never married ; that she died intestate, and that letters testamentary upon her estate were granted to Almeron H. Cole, who had assumed the duties of administering upon the estate of the said Chloe Hyde, deceased. The plaintiffs further stated and claimed that by reason of the death of the said Chloe Hyde, without lawful issue, they became entitled to receive from the fund left by the said David Hyde, deceased, by virtue of that clause of the will hereinbefore recited, the sum of $10,000 in the manner specified in said will, that is to say, to be paid to the plaintiffs in four equal annual payments after the death of the said Chloe Hyde; that one-fourth of said sum, viz. $2500, became due and payable to the plaintiffs on the 21st day of May, 1851, and the like sum became due and payable to the plaintiffs on the 21st day of May, 1852, and that ample funds belonging to the estate of the said David Hyde, deceased, and in the hands of the executors of the said Daniel Kellogg, deceased, or belonging to the estate of the said Chloe Hyde, deceased, and in the hands of her administrator as aforesaid, remained to satisfy and discharge the said legacy so given to the plaintiffs. And the plaintiffs further stated that no part of the said legacy, so bequeathed by the said David Hyde to the plaintiffs, had been paid to them, either by the executors of the said Kellogg or the administrator of the said Chloe Hyde, and although often requested to pay the installments now due, they had hitherto neglected and refused to pay the same. The plaintiffs therefore claimed that the same was due to them, either from said executors or the said administrator, with interest from the several times when the same became payable by the terms of the will of said David Hyde. And they asked the judgment of the court, declaring the rights of the plaintiffs as legatees as aforesaid, and ordering and directing

that the said two installments past due, with interest, should be paid to them from funds so as aforesaid left by the said David Hyde, in whichever of the defendants' hands the same might be.

The defendant Almerin H. Cole demurred, separately, to the complaint, and assigned the following causes of demurrer: 1. That there was a defect of parties defendant; that the heirs at law and next of kin of Chloe Hyde should have been made defendants; that the heirs at law and next of kin of Daniel Kellogg should have been made defendants; and that the devisees and legatees of Daniel Kellogg should have been made defendants. 2. That the complaint did not state facts sufficient to constitute a cause of action against the defendant. That it did not allege that this defendant had any funds in his hands, out of which he could or ought to pay the legacy mentioned in the complaint, or any part thereof. That it did not state or allege whether the assets, out of which the said legacy was payable, were in the hands of this defendant or in the hands of the executors of Daniel Kellogg, his co-defendants, but called upon the court to ascertain who ought to pay the demand the plaintiffs sought to recover, and then to render a judgment against such of the defendants as might be found to have the assets in their hands. That it did not appear, on the face of the complaint, that this defendant was liable, as the administrator of Chloe Hyde, to pay to the plaintiff the legacy of $10,000 mentioned in the complaint, or any part thereof. 3. That it appeared on the face of the complaint, that the plaintiffs were not entitled to sue for and recover the legacy of $10,000 therein mentioned, for the reason that the bequest of the said legacy to the plaintiffs was void and of no effect. That it was repugnant to the absolute devise and bequest of all the rest and residue of the real and personal estate of David Hyde to his daughter Chloe Hyde, who, by the terms of the will as set out in the complaint, had the right to dispose of the whole residuary estate in her lifetime. That by the terms of the will, as set out in the complaint, Chloe Hyde took a fee simple in the residuary real estate and the absolute property in the residuary personal estate of David Hyde, and the bequest over to the plaintiffs upon the contingency that

Chloe Hyde should die without lawful issue, was inoperative and void.

The defendants John Kellogg and George F. Leitch, two of the executors of Daniel Kellogg, also demurred separately; alleging similar causes of demurrer as those above mentioned. The cause having been brought to a hearing upon the demurrers, at a special term of the court, held in the county of Monroe, in January, 1853, before Justice Welles, it was ordered and adjudged that the plaintiffs have judgment upon the said demurrers, with liberty to the defendants to answer, on payment of costs. The following reasons were assigned by the justice for his decision, at the special term:

WELLES, J. " Before considering the questions which involve the construction of the will of David Hyde upon which the claim of the plaintiffs is founded, I will notice the objections to the form of the complaint, and the question of parties, raised by the demurrers, and urged upon the argument.

1st. The first point made by the defendant Cole is, that the complaint does not allege that he, the said Cole, has in his hands any funds that ever belonged to the estate of David Hyde, deceased, and that therefore there is no foundation laid for a judgment against him in the action. I think it was proper to make the administrator of Chloe Hyde a party. If he has not received the funds claimed by the plaintiffs, he should have set up that fact in an answer; and if it should turn out to be true, and he should make no claim to it as the representative of Chloe, the complaint would be dismissed as to him, with costs. If, on the other hand, he either had the funds, or claimed the right to them, he was a necessary party to a complete determination or settlement of the questions involved in the action. (*Code*, § 118.)

2d. The second point made on behalf of the same defendant is substantially like the first, and the same answer is applicable. The defendant Cole is shown by the complaint to occupy a position which casts upon him the duty of claiming the funds in question, whether he has ever received them or not, provided his intestate was entitled to them absolutely, under the will of her

father. If he neither has nor claims such funds, all he has to do, as before suggested, is to answer and disclaim, and go out of court with his costs.

3d. The third point made is, that the defendant Cole, in his character of administrator, cannot, in view of the facts stated in the complaint, be liable to pay the legacy to the plaintiffs, or any part of it. The plaintiffs do not ask to have him pay it, unless he has received it. If he has received the money, as the administrator of Chloe, under the residuary bequest in her father's will, he is the only one who should pay it, and in that event, only, do the plaintiffs ask judgment against him for it.

4th. In the next place the defendant Cole insists that, assuming that since the death of Daniel Kellogg, his executors have paid over to Chloe, in her lifetime the thirty thousand dollars received by them as such executors, the court must infer that they retained in their hands a sum sufficient to satisfy all the charges on the whole assets, and only paid over to her the residue ; and in that case Chloe only received what was her own, and that her estate cannot be charged with the amount of the legacy to the plaintiffs, and her legal representatives cannot be sued to recover it. The positions here taken have been already substantially answered, and it may be added, that it was proper to make Chloe's representatives parties, in view of the question arising under the will, whether the bequest over to the plaintiffs of $10,000 was valid, or whether she took an absolute estate in the whole residue.

5th. In the fifth place this defendant contends that Chloe Hyde was never, in her lifetime, chargable in any form with the payment of the legacy to the plaintiffs. That it was not payable until after her death ; that it is not a demand against her estate, and her administrators cannot be compelled to pay it. This point proceeds upon the ground that the legacy in question is valid, and that Chloe and her administrator have so regarded it and have always acted accordingly. If that be so, the defendant should have put in his disclaimer. If the legacy to the plaintiffs was for any reason invalid, then the whole residue belonged to Chloe absolutely ; and if it has not been paid over to her, or

her administrator, the latter may still claim it; and the question could not be fully and finally litigated and adjudicated with the representatives of Kellogg, without making Chloe's administrator a party, and giving him an opportunity of setting up a claim to the amount of this legacy as a part of the whole residue.

6th. It is also insisted, on the part of the defendant Cole, that as the action is not in the nature of a bill for an account between the estates of Daniel Kellogg and David Hyde, but the plaintiffs ask for judgment against all the defendants, directing them to pay the legacy out of the funds left by David Hyde, "in whichsoever of the defendants' hands the same may now be;" that no such judgment can be rendered without an account, because it does not appear that either class of the defendants are liable, in equity, to pay the whole, or any specific portion of the demand; that they are not liable *in solido,* and no discovery is sought. The complaint alleges that in May, 1824, Daniel Kellogg took out letters testamentary upon the will of David Hyde, and took upon himself the duties of executor thereof, and received of the personal estate of his testator the sum of $30,000 in money, subject to the directions contained in the will, and that ample funds belonging to the estate of the testator, and in the hands of the executors of Daniel Kellogg, or in the hands of the administrator of Chloe Hyde, remain to discharge the legacy given to the plaintiffs. With these allegations, admitted by the demurrer, I can perceive no necessity for an account before the plaintiffs' claim is paid. The idea of a deficiency of assets is precluded; and if the means are ample, the legacy, if valid, should be paid as it becomes due, according to the will. No liability, *in solido,* on the part of the two classes of defendants is charged. The prayer for relief is simply, that whichsoever of the defendants has the money, designed by the testator for the plaintiffs, should pay it over.

7th. The seventh point made by the defendant Cole, is, that there is no legal privity between the administrator of Chloe Hyde and the executors of Daniel Kellogg, authorizing them to be joined as defendants in the action. That if the plaintiffs have any remedy, it is against the estate of David Hyde that went

into the hands of his executor, and therefore that Cole was improperly made a party defendant. It has already been shown why it is deemed proper to make the representative of Chloe Hyde a party defendant, and no further discussion or examination of this point is necessary.

8th. The eighth and last point made on the part of the defendant Cole, is, that the complaint is bad for uncertainty. That it does not state facts sufficient to constitute a cause of action against either of the defendants, or either class of them. That it does not allege that either of them has the whole fund, or any part of it, but says that one or the other has got it. That it does not ask for a judgment that one or the other should pay, or that all should pay, but that whoever has the money should pay over. Whether the complaint states facts sufficient to constitute a cause of action, depends upon the question of the validity of the bequest in the will of David Hyde to the plaintiffs. That question will be considered hereafter. Assuming that bequest to be good, and that the event has happened upon which it depended, I think a good cause of action is stated. The claim to the legacy is established, at least against the executor of David Hyde, and as I shall hereafter attempt to show, under the circumstances of this case, against the executors of his executor. It is alleged that the latter received funds sufficient which belonged to the estate of David Hyde, and so far as that class of the defendants are concerned, it is immaterial whether they have paid them over to the defendant Cole or not. If they have done so, they did it in their own wrong, and are liable to the plaintiffs nevertheless. The complaint alleges that they retained the fund, with its increase, until the death of Chloe, after which it was their duty to pay over to the plaintiffs the amount of the legacy as it became due. The plaintiffs, however, do not ask that they pay it unless the fund still continues with them; (and it is to be presumed they continue to hold it until the contrary appear;) and they ask, as I think they have the right to ask, that in case their fund has by any means got into the hands of the administrator of Chloe, he be adjudged to pay over to them.

The defendants John Kellogg and George F. Leitch, two of

the executors of the estate of Daniel Kellogg, make the following points; the defendant David A. Comstock not appearing in the action.

1st. They contend, in the first place, that the complaint does not state facts sufficient to constitute a cause of action against the estate of their testator; because as such executors, being sued in their representative character only, they never had any power over the real or personal property of David Hyde. That having no power over the assets of Daniel Kellogg to appropriate them in discharging obligations which he was under as executor of David Hyde, there is no obligation resting on them to pay the legacy in question. That as executors of Kellogg they have nothing to pay it with, and have no right to administer on the estate of David Hyde, which is expressly taken away from them by the revised statutes; citing 2 R. S. 71, 2, § 17. Upon this point I have had considerable difficulty, and confess I do not feel quite confident in the conclusion to which I have arrived. Daniel Kellogg was not only the sole executor of David Hyde, but the testamentary guardian of his daughter Chloe, until she should arrive at the age of twenty-one years; and the will provides that all, or such parts, of the testator's estate as he should deem necessary, should be applied to her maintenance, education and support. The complaint states that after the death of David Hyde, his will was duly proved and admitted to probate by the surrogate of Cayuga county, and letters testamentary issued to Daniel Kellogg, on or about the 17th day of May, 1824, and that said Daniel Kellogg took upon himself the duties of such executor, and received of the personal estate of David Hyde into his hands and under his control the sum of $30,000, subject to the directions contained in the will. That said Daniel Kellogg died in May, 1836, having previously made his will, by which he appointed the defendants Kellogg, Leitch and Comstock the executors thereof, who proved such will, received letters testamentary thereon, and took upon themselves the duties of such appointment. That said Daniel Kellogg, after his appointment as executor of Hyde's will, continued to retain in his hands, management and control, the funds received by him as aforesaid,

during his lifetime. That at his death and on the appointment
of the executors of his will as aforesaid, the said fund, with its
increase, came into the possession and under the control and
management of his executors, and so continued in their posses-
sion, management and control, until the death of said Chloe
Hyde, in the year 1850. By the revised statutes, no executor
of an executor shall, as such, be authorized to administer on the
estate of the first testator ; but on the death of the sole or sur-
viving executor of any last will, letters of administration with
the will annexed, of the assets of the first testator, shall be
issued, &c. (2 *R. S.* 71, 2, § 17.) In another place it is de-
clared that an executor of an executor shall have no authority to
commence or maintain any action or proceeding relative to the
estate, effects or rights of the testator of the first executor, or to
take any charge or control thereof, as such executor. (2 *R. S.*
448, 9, § 11.) These sections have changed the law by which an
executor represented his testator, not only in regard to the inter-
ests of his testator which he held in his own right, but those
which he held as executor of a previous testator ; and so long
as the chain of representation was unbroken by any intestacy,
the ultimate executor was the representative of every preceding
testator, however numerous might have been the succession.
(*Toller on Ex'rs,* 68.) It would seem quite clear, therefore,
that under the statutes referred to, the executors of Kellogg
have no right as such to administer on any part of the estate of
David Hyde, and that whatever remains to be administered of
that estate, must be done by an administrator *de bonis non.* By
section 60, (2 *R. S.* 81,) it is provided, that every person who
shall take into his possession any of the assets of any testator or
intestate, without being thereto duly authorized as executor, ad-
ministrator or collector, or without authority from the executor, ad-
ministrator or collector, shall be liable to account for the full value
of such assets to every person entitled thereto, and shall not be
entitled to retain or deduct from such assets for any debts due
to him. By another section, (2 *R. S.* 449, § 17,) no person shall
be liable to an action as executor of his own wrong, for having
received, taken, or interfered with, the property or effects of a

deceased person ; but shall be responsible as a wrongdoer, in the proper action, to the executors or general or special administrators of such deceased person, for the value of any property or effects so taken or received, and for all damages caused by his acts, to the estate of the deceased. These two sections, in effect, abrogate the office of executor *de son tort*, and abolish the rule by which any one, wrongfully and without authority interfering with the assets of a deceased person, could be sued and made liable as executor of the estate of such deceased person. The defendants, Kellogg, Leitch and Comstock, are not sued as executors of their own wrong. In an action against a party as such executor, he was treated as the executor of the estate of the deceased party whose estate was involved in the plaintiffs' claim. In this case, these defendants, in this view, would have been sued as executors of David Hyde, and not of Daniel Kellogg. But they are made parties in an equitable action, with a view of reaching a fund which their testator held, at the time of his death, as a trustee, and which fund came into their hands as his executors. This fund remained in the hands of Daniel Kellogg from 1824 until his death in 1836, a period of twelve years ; and I think, in view of the provisions of the will, the facts stated in the complaint, the sufficiency of funds, that Kellogg received and kept them, his double capacity of executor and guardian, and that Chloe survived him, it is to be intended, in the absence of any allegation to the contrary, that he had fully discharged his duties as executor, and that this fund remained in his hands, at the time of his death, as the guardian of Chloe ; all of it but $10,000 belonged to her absolutely, and that, also, in the event of her having lawful issue at the time of her death. She was, in any event, entitled to its usufruct. It does not appear by the complaint whether Kellogg, her guardian, kept the fund separate, or mixed with his own money. How the fact was, his executors would have better means of knowing than the plaintiffs ; and if it was kept separate and distinct from his own funds, his executors should have averred it, in order to claim any advantage from that fact. If it was kept mixed with his own funds, and remained so mixed, it would be a circumstance for calling on his

executors to account for it. The fund, at the death of Chloe, was in *their* hands as such executors, and they are not to be permitted to say they received it wrongfully. The plaintiffs make no such allegation. Until the death of Chloe without lawful issue, the plaintiffs had no right to say any thing about it, provided the money was safely invested. There is no aspect in which these defendants can be deemed as having rightfully received the fund in question, unless Kellogg be considered as holding it at his death as guardian, and consequently as trustee of Chloe, and that they received and held it as his executors. I am, upon the whole, disposed to take this view of the question; and if it be correct, the executors of Daniel Kellogg were properly made parties.

2d. It is next objected on the part of the executors of Kellogg, that his heirs at law and next of kin, with his devisees and legatees, should have been made parties defendants, and that their omission renders the suit defective. If the conclusions arrived at in considering the last point are correct, they dispose of the present objection. These defendants are not and cannot be sued as executors of Hyde, either as such rightfully, or of their own wrong; but I have attempted to show that they may be sued as executors of Daniel Kellogg, on the ground of his personal obligation to account and pay over the legacy in question to the plaintiffs, provided they still retain the funds which came into the hands of their testator for that purpose. If the bequest to the plaintiffs is valid, and the facts alleged in the complaint are true, the executors of Kellogg are liable to pay the plaintiffs the amount of this legacy. If Kellogg was still living, I think he would be deemed as having held the principal of this $10,000, during the life of Chloe, as trustee, for the benefit of such person or persons as the event might show were entitled to receive it, upon her dying without issue, as trustee for the plaintiffs, and liable to pay it over to them as it became due. Upon his death, it seems to me, all his rights and liabilities as such trustee, in relation to the personal estate, attached to his executors. The persons who it is alleged should have been made parties, have not and never had any interest in the question; and if they had,

they are properly and fully represented by these executors. The way is now prepared to consider the question of the validity of the bequest in question to the plaintiffs. This bequest is claimed on the part of all the defendants to be void:

1st. Upon the ground that it is limited upon an indefinite failure of issue. There is no doubt that when an executory bequest is made to depend upon an indefinite failure of issue of the first taker, such bequest is void, for the reason that it may not vest within the time limited by law for that purpose, which, before the revised statutes took effect, was a life or lives in being at the death of the testator, and twenty-one years and a fraction of a year after. It was equally well settled, that when the words of limitation were such as those used by the testator in this case, or similar words, they were interpreted by the courts to import an indefinite failure of issue, and not merely a failure of issue living at the death of the first taker; provided there were no other expression in the will manifesting a different intention on the part of the testator. In the case of *Patterson* v. *Ellis*, (11 *Wend.* 259,) Ch. J. Savage, in a very elaborate opinion, reviews a large number of authorities on the subject, and from them deduces the above rules. That case was decided by the late court of errors, and the opinion of the Ch. J. was the principal and the prevailing opinion of the court. This case must be decided according to the law as it existed before the revised statutes took effect; because the testator, David Hyde, died before the time. The revised statutes declare that when a remainder shall be limited to take effect on the death of any person without heirs, or heirs of his body, or without issue, the words "heirs" or "issue," shall be construed to mean heirs or issue *living at the death of the person named as ancestor*, and the same rule is made applicable in cases of limitations of future or contingent interests in personal property. (1 *R. S.* 724, § 22. *Id.* 773, § 2.) But there was another rule of interpretation of wills, paramount to all others, which has not been altered or infringed by any statute; and that was, that the intention of the testator was always to be sought for; and when discovered, such intention, if not unlawful, was to have effect. And although the legal, technical

sense of the words *dying without issue or heirs, or without lawful issue or heirs,* when unrestricted by other words in the will, was held to be an indefinite failure of issue; and although the presumption was that the testator intended to use them in that sense, yet that presumption was completely rebutted and overthrown when, from the context or other expressions in the will, it was apparent that the testator could not have so intended, but that he used them in a different sense. Unless I entirely mis-judge, such was the case in the will under consideration. It seems to me abundantly clear that the testator, David Hyde, could not have intended to limit this legacy to the plaintiffs upon the event of an indefinite failure of issue of his daughter, Chloe Hyde; but his intention was that it should vest in the event of her dying without issue *living at the time of her death.* This intention appears to be manifest by the fact, that he direct-ed the payment of the legacy to the plaintiffs in four equal annual installments after the death of the said Chloe. The direction as to the time of payment is positive, and is inconsistent with the idea of an indefinite failure of her issue, which might not happen in many generations, and indeed might postpone the vesting of the legacy through all time. He must have intended that if it vested at all, it should be at the death of his daughter, and be paid in four equal annual installments thereafter.

2d. The second ground of objection to the validity of the be-quest is, that it is a pecuniary legacy of a specific sum limited over out of a prior bequest, not of the same amount, but of the whole of a mixed real and personal general residuary estate; on the termination of which, it can only take effect; and that the limitation over does not terminate the whole estate, but only in part; and leaves it good for the remainder. The fact that the legacy was to be taken out of the *residuum* of the estate, after the other provisions of the will were complied with, in my judg-ment constitutes no objection to it. If that was the testator's intention, it was lawful for him so to declare. This legacy was not to vest upon the termination of the whole of the residuary bequest to Chloe, nor indeed of any part of it; excepting, it may be, the interest or accumulations upon its amount during

her life; which I think she was entitled to, and which was a part of the absolute gift to her of the residue. The bequest to her was absolute and unconditional of the whole residue, excepting $10,000 thereof; and of that amount it was conditional. If she should have issue living at the time of her death, that sum would go to such issue in the regular course of distribution, unless she gave it a different direction by her will. If the contingency should happen, upon which the legacy to the plaintiffs depended, neither her heirs nor next of kin would have any claim to it; and any disposition which might be made of it by her will, would be inoperative. That such was the intention of the testator, I think is clear from the language employed in his will; and I am not aware of any rule of law which should frustrate it. If the will had given to Chloe Hyde the right to use and dispose of the residue of the testator's estate, *including the amount of the legacy in question*, or if such a right could be inferred upon a fair examination of all the testator's language employed in reference to the question; in that case there is no doubt but her interest and title in the whole would have been absolute; and any bequest over of any part of it would have been void; for the reason, that such right in her would have been incompatible with the testator's right to bequeath it over. The absolute right of disposition always implies absolute property, and it cannot reside in two persons or classes of persons at the same time. And this is all the authorities prove, which have been referred to on this point by the counsel for the defendants.

3d. In the third place the defendants contend that the legacy to the plaintiffs being limited over upon the termination of a previous estate, such limitation cannot be sustained, because the whole subject matter to which it is attached is not, as an entirety, to be terminated; and that a gift over of a part of a chattel, cannot be sustained, without first determining the prior estate of the first taker; nor can a gift over of a pecuniary legacy for a specified amount, be carved out of a general residuary bequest to the first taker, without first determining such prior estate of the residuary legatee. This point is so much like the last, that both might have been considered together. It all depends upon

the intention of the testator, to be collected from the language of the will.     And it has been attempted to be shown that such intention, in this case, was not to give the whole of the residue to Chloe, except in the event of her leaving issue at the time of her death.     That all the interest she took under the will in $10,000 of the residue, was the use of it during her life ; and that the ultimate disposition or destination of the principal of that part of the residue, depended upon whether she should leave issue at her death.

4th.  The defendants next contend that by the will Chloe Hyde took an absolute estate of inheritance in the whole residue ; and that the bequest over of the legacy to the plaintiffs was inconsistent with, and repugnant to, such gift to Chloe, and is therefore void. If the premises contained in this point are true, the conclusion stated is a matter of course.     But if the interpretation which I have given of the testator's intention be the correct one, it puts an end to this objection.     The words used in the clause of the will, by which the residue of the estate is given to Chloe, are abundantly sufficient and effective, to give her an absolute estate in fee simple in the whole of such residue, if they were not ex- plained and qualified by what follows.     The court is bound to give effect to every word of the will, without change or rejection, provided an effect can be given to it, not inconsistent with the general intent of the whole will taken together ; and with a view of discovering such intention, resort may be had to the different clauses and provisions of the instrument, without regard to their local position.     In the present case the testator evidently meant something, when he undertook to give this legacy to the plain- tiffs ; and there can be no more doubt of his meaning in this respect, than in respect to any other provision of his will.     That meaning could not be more clearly expressed than the will itself expresses it.     It is the same in effect as if he had given the legacy to the plaintiffs among other specific legacies in the will, and afterwards given the residue to Chloe.     But if I am wrong in supposing there is no repugnancy in the bequest to Chloe Hyde and that to the plaintiffs, there is another rule, which, it seems to me, will uphold and sustain the latter.     It is, that when

Theological Seminary of Auburn v. Cole.

the will expresses two different intentions, which are contrary to, and irreconcilable with, each other, the purpose last expressed must prevail. Mr. Jarman, in his admirable treatise, says : "It has become an established rule in the construction of wills, that when two clauses or gifts are irreconcilable, so that they cannot possibly stand together, the clause or gift which is posterior in local position, shall prevail; the subsequent words being considered to denote a subsequent intention." And he adds, "hence it is obvious that a will can seldom be rendered absolutely void by mere repugnancy; for instance, if a testator in one part of his will gives to a person an estate of inheritance in lands, or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a life interest only, the prior gift is restricted accordingly." (1 *Jarm. on Wills*, 411.) In the present case the gifts of the legacy to the plaintiffs is posterior in local position in the will, to the bequest to Chloe ; and if necessary to resort to it, I think the plaintiffs are entitled to claim the benefits of the principle just referred to.

The next objection to the bequest in question, relates to the power or capacity of the plaintiffs to take it. It is contended that the legacy is given to the plaintiffs in trust ; and that the object of the trust being to endow a professorship, it is void, because, first, the plaintiffs, as a corporation, have *no power to take and execute such trusts ;* and second, because the trust created points to a *perpetuity.*

Among other powers conferred upon the plaintiffs by their act of incorporation, (*Sess. Laws of* 1820, *ch.* 215,) the first section declares that they shall be capable in law of taking, purchasing, holding and conveying, both in law and equity, any estate real or personal ; and providing that the clear annual value or income of their real estate should not exceed $3000, and that of their personal estate $7000. The recital to the act shows that the object of their charter was to enable the theological seminary the better to obtain and manage the necessary funds for the accomplishment of their benevolent object. The third section devolves upon the trustees the immediate care of the seminary and

the management of the estate, both real and personal, of the institution, and gives them power to sell and otherwise dispose of the same, for the purpose of benefiting its funds, and of applying the avails of those funds from time to time to the purposes of the institution, in such way and manner only, and in such sums, as should be appointed and directed by the board of commissioners of the presbyteries. The fifth section creates the board of commissioners, or directs how and by whom they should be chosen ; who are to have the general supervision and control of the affairs of the institution, to appoint tutors, *professors* and other officers, &c. The 7th section declares that if the funds shall be applied to any purpose other than what is expressed or intended by the act, it shall work a forfeiture of the charter. And the 8th section declares that the act *shall be construed benignly and favorably for every beneficial purpose intended.*

It is to be remarked, at the outset, that these plaintiffs can act in no other capacity than that of trustees; as their name, and the nature of their powers and duties import. All the funds and property of the institution are to be held by them as *trustees.* They are made capable by the first section of taking, &c., any estate ; and no limitation is imposed, excepting in relation to the amount of the clear annual value or income thereof. Again, the fifth section contemplates the appointment of professors. And if there are professors, there must be professorships, and they must be supported. And I am unable to perceive any valid objection to endowing such professorships. Probably no one will deny that the legitimate objects of a theological seminary would be better promoted by having its professorships properly endowed, than to leave them dependent upon an uncertain and varying support from the general funds of the institution. For one, I entertain no doubt that its success and usefulness must depend very much, if not entirely, upon there being a sufficient number of professorships established, and filled by learned, talented and pious men, and that such professorships be liberally endowed. The object and purpose of the institution was to prepare pious young men to become teachers of the Christian religion ; and the legislature have declared that its charter shall be construed

Theological Seminary of Auburn *v.* Cole.

benignly and favorably for every beneficial purpose intended. And they have guarded the charter with ample checks and restraints against any abuse of its powers, and have reserved the right at any time to amend, modify or repeal it. I am satisfied that the endowment of a professorship in this case, involves no other or different perpetuity than the plaintiffs' charter contemplated and will permit.

I have thus gone through with an examination of the various points presented upon the argument, and have noticed all the objections raised by the defendants' counsel, to the right of the plaintiffs to recover upon the facts stated in the complaint. Some of the causes of demurrer stated were not urged upon the argument. I have, therefore, omitted to notice them; regarding them as abandoned. For the reasons which I have attempted to set forth, I think the plaintiffs are entitled to judgment on the demurrers; unless the defendants answer the complaint, which they are allowed to do, on payment of costs."

A judgment was entered, at the special term, in accordance with the above opinion, and the defendants appealed to the general term.

*B. L. Bessac*, for the appellants. I. The complaint does not allege that any portion of the assets which went into the hands of David Hyde's executor, was ever paid over by him to Chloe Hyde in her lifetime, or that any portion of them has come to the hands of her administrator since her decease. The plaintiffs have no right of action, therefore, against the defendant Cole, and cannot lawfully claim that he should pay any portion of the legacy in question. It appears by the complaint that the fund, on which the legacy is charged, went into the hands of Daniel Kellogg, and it does not appear that Chloe Hyde ever had any thing to do with it. It was not a demand against her in her lifetime, and it is not therefore a claim against her estate, for which her administrator can be charged in any form.

II. The plaintiffs claim to recover a judgment against all the defendants, *directing them to pay the legacy* out of the funds

left by David Hyde, " in whichever of the defendants' hands the same may be." We submit that no such judgment can be rendered, because it does not appear by the complaint that either class of the defendants is liable to pay the whole or any portion of the demand. It does not allege that either of them has the whole fund or any part of it. It says that one or the other has it. It does not tender an issue on any material point in the case. It does not ask for a judgment that one or the other should pay, but that whoever has the money should pay it over. It calls upon the court to find out where the fund is, and then to render a judgment in their favor against whoever has the money in his hands.

III. The complaint does not state facts sufficient to constitute a cause of action against the executors of Kellogg's estate. Because, *as such executors*, they never had any power over the estate of David Hyde, and have no right to administer upon it. (2 *R. S.* 72.) There must be an administrator with the will of David Hyde annexed, before payment of this legacy can be enforced.

IV. The unadministered assets of Hyde having come to the hands of Kellogg's executors mixed with his personal estate, and this suit being brought to reach a part of Hyde's assets so in their hands, all persons who are interested in both estates, should be made parties to the action, before a decree can be made.

V. It appears, on the face of the complaint, that the plaintiffs are not entitled to sue for and recover the legacy of $10,000 therein mentioned, for the reason that said legacy is void. The legacy is limited upon an indefinite failure of issue. The words of the limitation over would have created an estate tail in real estate ; it therefore gives an absolute interest in personal property to the first taker. (6 *Hare,* 165. 11 *Wend.* 259.) The legacy can only be supported as an executory devise, and as such it is void. (*Miller* v. *Macomb,* 26 *Wend.* 229. *Ch. Justice Anderson in Corbett's case,* 1 *Rep.* 856, 866. *Chudfield's case, Id.* 1386. *Preston on Estates,* 90, 91. *Co. Litt.* 49 *a,* 143 *a.* 2 *Black. Com.* 163. 4 *Kent,* 125, 217, 218.) It is a pecuniary legacy of a specific amount, limited over upon (or rather out of)

a prior devise, not of the same amount, but of the whole of a mixed real and personal residuary estate, on the termination of which it can only take effect; and the *limitation over* does not terminate the whole estate, but only part of it, and leaves it good for the remainder. (*Fearne on Cont. Rem.* 255, 230, *8th ed. and cases there cited.*) An executory devise is a mere substitute for a contingent remainder. (4 *Kent's Com.* 272.) It is always dependent upon the defeasance of a prior particular estate. The devise to Chloe Hyde, her heirs and assigns forever, of all the rest and residue of the real and personal estate of the testator, vested in her the whole interest in such residue absolutely, and the subsequent devise to the plaintiffs, being repugnant to the absolute devise, is void. The words of limitation by their legal intendment give her an absolute estate in the whole residue; this is the clear intent of the testator and the principal design of the will; and in all such cases any limitation over is void. (5 *Mass. R.* 500. 1 *P. Wms.* 1.) Where it is clear that the testator intended to give the first takers *only the use* of personal estate, a limitation over will be upheld. It is always a question of intention. Where the devise is such that the ownership of the property devised becomes vested in the first taker, any attempt of the testator to control it afterwards, or to restrict the power of disposition of it, is an interference with the absolute rights of property already granted, and is void. (*Paterson* v. *Ellis*, 11 *Wend.* 299. 10 *John.* 19. 16 *Id.* 537.) Chloe Hyde had the power to exhaust the whole residuary estate in her lifetime; and her testamentary guardian had the same power given to him in express terms, by the will. There was no portion of this residuary estate that the first taker had not the power to dispose of as she saw fit. Suppose the whole residue had been $10,000 in bank stock; must she live on the annual income, or become dependent? Suppose it had been wild and unproductive lands that would yield no income; must she starve? Suppose she had mortgaged the real estate to obtain the means of support; would the plaintiffs have taken it discharged of the mortgage, at her decease? We submit that the testator intended to give the plaintiffs $10,000, in case his daughter should die

without lawful issue, leaving so much of the residuary estate behind her; and if this is so, then the rights of the plaintiffs are at an end. (*Ide* v. *Ide*, 5 *Mass.* 500. 2 *Barb.* 537. *Cruise's Dig.* ch. 17, § 13.) Where it is impossible, according to established rules of construction, to give effect to the whole apparent intention of the testator, the construction must be adopted which will carry out the *principal design* of the will, provided that be legal; and whatever is inconsistent by the rules of law with such design must yield. (*Macdonald* v. *Walgrove*, 1 *Sandf. Ch. Rep.* 274.) If this legacy would have been valid had it been given to the corporation absolutely and for its general purposes, yet as it is given in trust to endow a professorship, it is void. That the terms of this bequest create a trust, see 10 *John.* 506; *Hill on Trustees*, 55, 66; 2 *Fonbl. Eq.* 36; 1 *Vesey & Beame*, 273; 3 *Peters*, 119; 1 *Hare*, 445; 1 *Keen*, 80; 3 *Mylne & Craig*, 507. This corporation has no power to execute a trust, given by its charter or necessarily implied. (*See* 2 *Cowen*, 568, and cases there cited; 15 *Barb.* 139; *Laws of* 1820, *p.* 197.)

*J. Porter*, for the respondents. I. Cole was properly made a party defendant, on several grounds : (1.) The action is brought to obtain a construction of the will of D. Hyde. Cole represents the next of kin of Chloe Hyde, to whom the fund belongs if the legacy to the plaintiffs is void. He is therefore a necessary party to the action, for the interest of those he represents is involved in its results. (2.) As the administrator of Chloe, he might legally lay claim to the fund, if it had not been paid to Chloe in her lifetime; and if it had, then it was in his hands, and on that account he is a necessary party. (3.) If the legacy to the plaintiffs is void, then Chloe took the whole residue absolutely, and that question could not be settled without giving her administrator an opportunity to be heard. (4.) There is no necessity of showing a privity between co-defendants, in order to join them in the same action. The code (§ 118) permits any one to be made a defendant who has, or claims, an interest adverse to the plaintiffs, or who is a necessary party to a complete determination or settlement of the question involved therein.

II. The executors of Daniel Kellogg were properly made parties defendants. The complaint states that these defendants, as executors, &c., received the $30,000 with its increase, into their possession, control and management, and *so held it until the death of Chloe.* With these facts admitted, they are answerable in this action to give an account of this fund to the extent of this legacy. They must be considered as holding it in trust for the rightful claimant, unless they have since paid it over. The presumption is, that it was mixed with the other funds of Kellogg's estate. III. The legacy given to the plaintiffs by the will of David Hyde is good and valid in law, as an executory bequest. The provision in the will, specifying the times of payment, is conclusive to show that the testator did not, by the expression "dying without lawful issue," intend any other than issue living at the death of Chloe Hyde. (4 *Kent's Com.* 282. *Hill* v. *Hill,* 4 *Barb.* 419. *Jackson* v. *Staats,* 11 *John.* 337. *Fosdick* v. *Cornell,* 1 *Id.* 440. *Moffat* v. *Strong,* 10 *Id.* 12.) IV. The bequest to Chloe of all the rest and residue of his personal estate did not, so far as the amount of the legacy in question is concerned, give her an absolute property in the same, nor a right to dispose of the same in her lifetime. She only took a *conditional interest therein,* depending on the event of her leaving issue at her death. (*Hill* v. *Hill,* 4 *Barb.* 419. *Helmer* v. *Shoemaker,* 22 *Wend.* 138. *Lott* v. *Wyckoff,* 1 *Barb. S. C. R.* 572, 576. *Moffat* v. *Strong,* 10 *John.* 12.) V. The objection, that the plaintiffs have not the power to receive and execute the trust arising out of this legacy, was not taken as one of the specific grounds of demurrer. It cannot, therefore, be now made. (*Code,* §§ 144, 145, 147, 148.) But if the objection can now be made, then we say that the plaintiffs' charter confers this power. (*Session Laws of* 1820, *chap.* 215.) VI. Neither the heirs at law or next of kin of Chloe Hyde, nor the heirs at law or next of kin of Daniel Kellogg, nor the devisees or legatees of Daniel Kellogg, are necessary parties to this action.

VII. The purpose of the testator to give the plaintiffs the $10,000, being clearly expressed in the will, and in a part subsequent to that which gave the residue to Chloe, the last must pre-

vail, as showing the last intention of the testator. (*Jarm. on Wills*, 411. *Bradstreet* v. *Clarke*, 12 *Wend.* 602, 665. *Pittus* v. *Pittus*, 4 *McCord*, 151.)

*By the Court*, T. R. STRONG, J. It is manifest, upon the face of the will of David Hyde, that he intended the legacy in question should vest in the plaintiffs, upon the death of his daughter without issue living at the time of her death. The legacy is made payable in four equal annual payments after her death, which is consistent with that intention, and inconsistent with any other which, from the language employed, he can be supposed to have entertained. It is wholly inconsistent with the idea that he intended it should take effect only upon an indefinite failure of her issue. That event might not occur until long after the periods provided for its payment. The fair and only reasonable construction of the language is, that the gift was to be perfect at her death, provided no issue of hers should then be living; that it was to be absolute before the times of payment should begin to run.

The position cannot be sustained that this legacy is invalid, because it is a limitation over of part only of the estate devised and bequeathed to the daughter, leaving the former estate, as to the residue, to continue. There is nothing inconsistent in a limitation over of part, and the continuance of the former estate as to the residue; and the only ground upon which a prior estate must be terminated upon a limitation over taking effect, in order that the latter may be valid, is, that the two estates are not consistent; that they cannot exist together. Where no such inconsistency exists, there is no rule of law which will prevent the operation of the limitation over, if otherwise valid. If a limitation over relates to part only of a former estate, it is sufficient, so far as this point is concerned, that the estate, as to that part, is terminated by it.

The will does not admit of the construction that the testator intended to vest in his daughter the whole estate given to her, absolutely. As to the amount of the legacy to the plaintiffs, it is evident he intended that she should have only the use, unless

she should have issue living at her death, and that if she should not have such issue, the same should go to the plaintiffs. The clause directing that all or such part of the testator's estate as the guardian of the daughter appointed by the will should deem necessary, should be applied for her maintenance, education and support, does not disprove that intention; nor is it incompatible with the gift to the plaintiffs that the latter cannot be supported. It will be observed that the guardian is not clothed, in terms, with an absolute power of disposition over the whole estate given to the daughter; that the power is limited to what he shall judge necessary in respect to her support and education; and it is apparent that the testator contemplated that the estate would be ample for all the purposes of the will, including the legacy to the plaintiffs. It was with such an understanding that the will was made. This is not a case of conflicting intentions or dispositions, one of which must fail for that reason. It is true there was a possibility the estate might at the testator's death be so small, or subsequently become so much reduced, that under the power to the guardian the whole of it might be exhausted, leaving nothing to satisfy the legacy; but in the contemplation of the testator it would, as it has proved, be far otherwise. It was not supposed by him that the power would interfere with the legacy to the plaintiffs. His intentions in regard to his daughter and the plaintiffs, in the views which he had of his property, and which appear to have been correct, were consistent, and might be fully carried out. That relating to the daughter has been fulfilled; that in respect to the plaintiffs may be; and such being the case, the law requires it should be. The intention of a testator is to be sought after, in the construction of wills, and effect is to be given to it if it can be done according to the rules of law.

I am satisfied that the plaintiffs have ample legal capacity to take a bequest for the purpose for which this is given. Without entering upon a discussion of this point, I will state that the purpose designated by the testator is, in my opinion, within the general objects of the incorporation, and that the general powers of the corporation are sufficient for its proper execution.

Theological Seminary of Auburn *v.* Cole.

Upon the allegations in the complaint it must be understood, I think, that Daniel Kellogg, at the time of his death, held the fund out of which the legacy is payable, as guardian of Chloe Hyde, the daughter of the testator; and it is expressly alleged, that at his death the fund came into the possession of the defendants, who are sued as his executors; and continued in their possession, management and control, until Chloe's death. As nothing to the contrary appears, it is to be inferred that the fund is still in their possession; and if so, I do not perceive any good reason why they may not be required to account and pay over to the plaintiffs, to the extent of their claim. A sufficient cause of action is disclosed, as against the administrator of Chloe, by showing the relation of the estate he represents to the fund, and that he has a right to contest the plaintiffs' demand. It was important to the plaintiffs to conclude his rights, and they might do so in this action. The action would have been defective if he had not been made a party defendant. Some uncertainty and confusion have been introduced, by the statement near the close of the complaint, of what the plaintiffs claim from the premises given, and some words in the demand of judgment, but the substantial cause of action is not thereby affected.

The judgment at special term must be affirmed, with costs.

[MONROE GENERAL TERM, September 4, 1854. *Johnson, Welles* and *T. R. Strong,* Justices.]