THE TRUSTEES OF THE THEOLOGICAL SEMINARY OF AUBURN *vs.* ALMERON H. COLE adm'r &c. of Chloe Hyde, deceased.

Where there is a bequest of the whole residue of the testator's estate, after payment of debts and legacies to one person for life, limited as to part, upon a contingency, to the use thereof for life, with a valid gift over of that part, upon the happening of the contingency, and as to the rest, absolute of the entire estate, as to the part of the estate to which the contingency relates, the income only can be paid to the residuary legatee; but as to that portion of the estate respecting which the bequest is absolute, the principal must be paid.

The gift over does not attach to the entire residuary estate, so as to render the whole a security for its payment, but the executor may, as to the legatee, set apart a principal sum sufficient to discharge the gift, and proceed to satisfy the other legacies.

And the residuary, or any other legatee, who has been paid his legacy, will not, in case of a subsequent deficiency of assets to pay the gift, from the waste of the executor, be obliged, for that reason, to refund any part of what he has received.

The residuary legatee is not entitled, before the happening of the contingency, to demand of the executor, on account of the legacy to him, any thing further than the balance of such legacy, after deducting a sum sufficient to pay the contingent gift when it shall become payable.

The administrator of the residuary legatee is not liable to the contingent legatee, for the payment of the contingent gift, after the contingency has occurred, without at least an allegation, and proof, that his intestate, or himself, has received more than the intestate was entitled to receive, and of such other circumstances as would clothe him with the character of a trustee for the plaintiff as to the excess.

ACTION to recover the two last installments, of $2500 each, of a legacy of $10,000, claimed to have been given by David Hyde, of Auburn, to the plaintiffs, by his will executed April 10, 1824, and which took effect by his death on the 12th day of April in the same year. He left real estate of the value of $12,000, and personal of the value of $20,000. The clause of the will under which the claim was made, and which was preceded by certain specific bequests, was as follows :

"I give, devise and bequeath *all the rest and residue of my estate, both real and personal,* which shall remain after payment of my debts, funeral charges and legacies above mentioned, unto my daughter, Chloe Hyde, *her heirs and assigns forever ; and if she should die without lawful issue,* then I give and bequeath

unto the Theological Seminary, of Auburn, in the state of New York, the sum of ten thousand dollars for the purpose of endowing a professorship in said seminary, to be paid to the said trustees *in four equal annual payments, after the death of the said Chloe.* I give *the custody, tuition and guardianship of the person* of my said daughter Chloe to my brother-in-law, Daniel Kellogg, Esq. until she shall attain the age of twenty-one years; and all or such part of my said estate as he shall deem necessary shall be applied for her maintenance, education and support." Daniel Kellogg was named as executor, with power to sell the real estate, and received letters testamentary in May, 1824. Chloe Hyde, the only daughter of the testator, became 21 years of age August 16th, 1837, and died on the 21st May, 1850, intestate and without issue, and the defendant, in July, 1851, received letters testamentary upon her estate. The executor paid her expenses during his life, and for some part of the time she resided in his family. He sold most of the real estate during his life, and the proceeds were received in part by him, and the residue by the executors of his will. He did not keep the assets of the estate separate from his private estate, but kept an account of his receipts and payments, making himself debtor for all the receipts, and crediting himself with all payments. Daniel Kellogg died May 4, 1836, and at his death all the assets of the estate of David Hyde, except what he had expended in the settlement of the estate, the payment of legacies, and the maintenance and education of Chloe Hyde, "remained absorbed in his estate, and passed as such into the hands of the executors of his will." Chloe Hyde never received into her possession, or exercised any actual control over, any part of the assets, beyond the sum required for her support, until August 1, 1849, when the executors of the will of Daniel Kellogg paid to her, by the conveyance of real estate, $47,000; and they subsequently paid her small sums for her support, until her death. She did not receive, during her life, so much in the aggregate as was due to her for the interest and income of the estate. On the 1st of January, 1852, the defendant entered into a written agreement with the executors of the will of Daniel Kellogg, by

which the sum due to him as administrator, from said executors, was fixed at $50,000; on account of which they then paid him in bonds and mortgages $31,775.27, and on the 1st of July, 1853, in lands, $12,000, and the balance remains unpaid.

The jury found a special verdict containing the above and other facts; upon which the justice who tried the cause, ordered a judgment for the plaintiffs, for the amount claimed, with interest. For further facts see the same case, when formerly before the court, 18 *Barb.* 360.

*John Porter*, for the plaintiffs. I. The legacy given by David Hyde's will to the plaintiffs, is good and valid in law as an executory bequest. The provision in the will specifying the times of payment, is conclusive to show that the testator did not, by the expression, " dying without lawful issue," intend any other than issue living at the death of Chloe Hyde. (4 *Kent's Com.* 282. *Hill* v. *Hill*, 4 *Barb.* 419. *Jackson* v. *Staats*, 11 *John.* 337. *Fosdick* v. *Cornell*, 1 *id.* 440. *Moffat* v. *Strong*, 10 *id.* 12.)

II. The bequest to Chloe of all the rest and residue of his real and personal estate, did not, so far as the amount of the legacy in question is concerned, give her an absolute property in the same, nor a right to dispose of the same in her lifetime. She only took a conditional interest therein, depending on the event of her leaving issue at her death, to determine whether it was absolute or not. (*Jackson* v. *Bull*, 10 *John.* 19. *Hill* v. *Hill*, 4 *Barb.* 419. *Helmer* v. *Shoemaker*, 22 *Wend.* 138. *Lott* v. *Wyckoff*, 1 *Barb.* 572, 576. 2 *Kent's Com.* 270.)

III. The guardian of Chloe had the power to apply to her maintenance, education and support, only so much of the estate as he should deem necessary for that purpose; this did not give him the absolute control over all the remainder devised and bequeathed to Chloe by the will. It is only when absolute ownership, and right of disposal of property, is given by the will, that the limitation over is held to be void, as inconsistent with the executory devise. (*The Attorney Gen.* v. *Hall, Fitzg.* 314. *Ide* v. *Ide*, 5 *Tyng*, 500. *Jackson* v. *Bull*, 10 *John.* 19.

*Livingston* v. *Delancy;* 13 *id.* 537.   *Jackson* v. *Robins,* 15 *id.* 169.)   Again, the power of disposal of any portion was given to the guardian, and not to Chloe, the cestui que trust.   And it was given for a particular, defined and limited object, and to be limited to the necessity of the case.   To contend that the guardian, under this clause, had the absolute power of disposal of the whole property, would be a manifest violation of the intention of the testator, as evinced by the whole will.

IV. Daniel Kellogg, the testamentary guardian of Chloe, though spoken of in the will as only guardian of her person, became, as such, guardian of her estate also; and it became his duty, imposed by statute, to take the management of her estate as such guardian.   (2 *R. S.* 150, §§ 1, 2, 3.)   Kellogg, being both executor and guardian, the law will presume, after a reasonable time has passed for settling all claims against the estate, that he held the funds in his hands as the guardian of Chloe. (*Karr* v. *Karr*, 6 *Dana*, 3.)

V. When Chloe became 21 years of age, she was not only entitled to the whole fund and its increase, except such parts thereof as had been paid out according to the directions of the will; but she had the legal possession of it—the actual possession of the executors of Kellogg was her possession.   If the fund existed in the shape of securities for money, they held them for her use; if in the shape of a debt due from the estate of Kellogg, the legal possession was in her.

VI. There is no foundation for the claim set up in the answer, that the legacy given to the plaintiffs was payable, if at all, out of the specific, original fund left by the testator at his decease, to be found either in the will or in law.   After Chloe became of age, she held the whole fund, with its increase, in her own right, subject however, in the contingency that has occurred, to pay from her estate the plaintiff's legacy.   It was a contingent trust in her.

VII. The defendant, as administrator, became entitled to all the personal property of Chloe, in whatever shape it existed, in money, stock, securities for money, debts, or in any other way; and his responsibility to answer for any claims against the es-

tate of Chloe can never be discharged, while any assets remain that may become available. (2 *R. S.* 82, § 6. *Wooden* v. *Bagley*, 13 *Wend.* 456. *Beecher* v. *Crouse*, 19 *id.* 306. *Jenkins* v. *Freyer*, 4 *Paige*, 47.)

VIII. The plaintiffs are authorized to receive and hold the legacy in question by their act of incorporation, and the laws of the state. (*Sess. Laws of* 1820, *p.* 197 ; *of* 1840, *p.* 267 ; *of* 1841, *p.* 245. *Yates* v. *Yates*, 9 *Barb.* 324. *King* v. *Rundle*, 15 *id.* 139.)

*H. R. Selden*, for the defendant. I. Chloe Hyde, under the will of her father, took an estate *in fee* in the lands, and an *absolute* estate in the personal property. The gift over, of $10,000, to the plaintiffs, is therefore void. 1. The governing principle in the construction of a will, as of every other instrument, is, that the intention of the maker is to be ascertained, and effect given to it so far as is consistent with the rules of law. 2. If that intention, when ascertained, is unlawful, it is as much the duty of courts to defeat it, as it is to effectuate it when lawful. (11 *Wend.* 294, 299, 301. 1 *Sandf. Ch.* 274.) 3. It was the intention of the testator here to give to his daughter Chloe, an estate *in fee* in his lands, and a like *absolute estate* in his personal property, subject to be defeated on her death, as to $10,000 (if so much remained unexpended by her,) in case she died without issue living at her decease ; the $10,000 to be in that event paid to the plaintiff. To determine the question of intention, I insist : (1.) That the will in the clearest terms disposes of the testator's *entire estate, real and personal,* and shows that it was not his intention *to die intestate with regard to any part of it.* The expression " all the *rest and residue* of my estate, both real and personal," without the added words, of inheritance, would have given to the devisee an estate in fee. (6 *John.* 191, *and cases cited in notes c and d ;* 16 *id.* 555, *Jones and Van Buren, arguendo ; Id.* 587, *Kent, Chancellor ;* 11 *id.* 374, *Yates, J. ;* 1 *T. R.* 411.) But the testator, to remove all possible doubt, not only gave to Chloe " the rest and residue of all his estate," but gave it to *her,* "*her heirs and assigns*

*forever.*" (2.) The plaintiff's construction must reduce the interest of the devisee in the lands, contrary to the express terms of the will, from a fee to a life estate, and her interest in the personal estate to a *life use of it only,* and would make the testator die intestate as to the remainder of his estate, after the termination of the life interest, and the payment of the plaintiff's legacy. (3.) Not only is the *entire estate* given to Chloe and her heirs, but the *express power of disposition* of it is given to her, by the *most appropriate and · comprehensive* of legal terms, for that purpose, viz : to " *her heirs and assigns forever.*" (4.) If only a life interest was given to the daughter, there was at least a possibility that the income might not be sufficient for her education and support, and that possibility was in the mind of the testator when he gave to her guardian power to apply " all or any part" of the capital of the estate to that object. That guardianship could only continue till she arrived at the age of 21. Did the testator, intend that after arriving at maturity, his daughter should have no power over the body of the estate which he left to provide for her wants, should it be necessary ? Could she appropriate no part of it, in case of marriage ? Such a construction as is claimed by the plaintiff would both contradict *the letter* of the gift to her, and do violence to *the whole spirit of the will.* (5.) I infer from the case already decided upon this will that the plaintiff's counsel and the court assume that Chloe Hyde took an absolute estate in all which was given to her, except the $10,000 claimed by the plaintiff ; and as to that, that she took " only the use, unless she should have issue living at her death, and that if she should not have such issue, the same should go to the plaintiffs." (18 *Barb.* 375, 383, *point* 4, 384-5.) I think there can be no distinction in her claim to the different parts, at least, of the *personal* estate. If the plaintiffs' claim is valid, it extended, *as against her, to every part of that estate,* reducing her right in the whole to the mere use of it for her life, the title being in the executor, in trust for the plaintiffs, to the extent of $10,000, and for the next of kin, not of Chloe Hyde, but of David Hyde, as to the surplus, if any. (*Jeremy's Eq. Jur.*

Trustees of Theological Seminary of Auburn *v.* Cole.

104. 1 *P. Wms.* 550, *and note* 1. 2 *Story's Eq. Juris.* § 1067. 1 *id.* §§ 540, 596, 606, *note* 1.) This result is in conflict with *the letter, and the whole scope and spirit of the will.* For these reasons, it is insisted that the testator *intended what he said* when he gave the entire residue of his estate, not before disposed of, to his " daughter, Chloe Hyde, *her heirs and assigns forever.*" 4. An *absolute* disposition having been previously made by the will of the whole property, the gift over to the plaintiffs on the·death of Chloe Hyde without issue was void. (1.) The legacy was never charged on the real estate, and the plaintiffs could never reach that or its proceeds, whether their legacy was valid or not. (*Lupton* v. *Lupton,* 2 *John. Ch.* 614, 623. *Swift* v. *Edson,* 5 *Conn. R.* 531, 536. *Gridley* v. *Andrews,* 8 *id.* 15. 2 *Story's Eq. Jur.* § 1247, *note* 2, *p.* 703, 6*th ed.*) The power of sale given to the executor, does not (until exerted) affect the title, nor work an equitable conversion of the real into personal estate. It requires a positive direction to produce that result. (*Leigh & Dalzell on Equitable Conversion, p.* 15.) (2.) The testator having given his personal property to his daughter, with power to dispose of it during her life, the gift over was void. (*Jackson* v. *Bull,* 10 *John.* 19. · *Jackson* v. *Delancy,* 13 *id.* 537. *Jackson* v. *Robins,* 16 *id.* 587, 588, 589. *McDonald* v. *Walgrove,* 1 *Sandf. Ch. R.* 274. *Ross* v. *Ross,* 1 *Jac. & Walk.* 154, 158, *note a. Child* v. *Baily, Cro. Jac.* 459.. *Paterson* v. *Ellis,* 11 *Wend.* 276. *Ide* v. *Ide,* 5 *Mass. R.* 500.) " If the *absolute property or right of disposal* is given to the first taker, he may defeat the devise over, and therefore it is void." (*Per Savage, C. J.,* 11 *Wend.* 277.) The words limiting the gift over, to what·the first taker should " die possessed of," and other similar expressions found in a number. of cases, are only effectual to defeat such gift because they "*imply* a power of alienation by the devisee." (10 *John.* 20.) An *express* power of alienation expressed by a gift to one his " *heirs and assigns forever,*" must be as effectual as an implied power for that purpose. (3.) Even if Chloe Hyde had not power to dispose of the estate, such ·power was given to the executor *for*

Trustees of Theological Seminary of Auburn *v.* Cole.

*her benefit*, and must have the same effect upon the gift over as though it were conferred upon her. "It is essential to the validity of an executory devise, that it cannot be defeated by the first taker." (*Paterson* v. *Ellis*, 11 *Wend.* 277. *Lewis on Perpetuities*, 135. 8 *Coke*, 96, *a.*) "The same doctrine that executory interests cannot be barred by the act of the first devisee extends to executory dispositions of personal chattels." (8 *Coke*, 96, *a ; note D. Fraser's ed.*) (4.) The bequest to the plaintiffs, being not specific, but general, and if it affects at all the personal estate given to Chloe Hyde, touching it only in part, cannot have the effect to defeat the *otherwise absolute* gift made to her, either wholly or partially. "A condition or limitation annexed to an estate ought to destroy the whole estate to which it is annexed, and not part of it." (1 *Coke*, 86, *b.*) This principle is applied to the quality and not to the quantity of the estate; but there is good reason, in cases like the present, for applying a similar principle to the *quantity* of estate and requiring that it should determine the whole. Here was $20,000 in value of personal estate given to Chloe Hyde, and but for this conditional gift over of $10,000 to the plaintiff, all would concede that her title was absolue. Is it proper to hold that this gift over of $10,000, should render the whole $20,000 inalienable for her life? If that question has an affirmative answer, then the gift over of $10,000 would produce the same result, and would do so even if the estate were $100,000. It may be said that the gift over would affect the alienability of only the $10,000 and not of the excess. I think otherwise, for the reason that the plaintiffs' legacy, if valid, is charged on the whole *personal* estate, at least, and must be paid, though it exhaust it all; and neither executors, nor courts, unless they can make a new will for the deceased, can set apart any specific $10,000, and say that the legatees' contingent claim shall be limited to that, and that the holder of the life interest may sell the balance. If this were done, and that which should be set apart should fail to pay the legacy, the legatees could follow the other parts of the estate, even into the hands of bona fide purchasers. (*Wilson on Springing Uses*, 36 *et seq.*) If our

view of this question is not correct, it is at least incumbent on the plaintiffs to produce some case, where a like conditional bequest over of a *part only* of what had been previously given, has been held valid.

II. Admitting the legacy to be valid, the plaintiffs have no claim whatever against *this defendant* on account of it. 1. The assent of the executor is indispensable to perfect the title of every legatee, either in law or equity, and whether the legacy be general or specific. (2 *Williams on Ex.* 1176, 1177.) In all cases of devises of personal estate, the whole vests in the executor, and therefore no legacy can come out of the executor without his consent. (2 *Atk.* 598.) Courts of equity however, considering the executor as a trustee, will compel his assent, in proper cases. (1 *Story's Eq. Jur.* §§ 540, 591, 593.) It is not perceived in the absence of the executor, and without either *allegation* or *proof* that he has ever assented to this legacy, how a recovery can be had against the defendant, assuming that he is shown to possess the funds that ought to pay it. Even if the legacy was of a *specific chattel*, I can see no ground on which there could be a recovery without showing the executor's assent. (*Doe* v. *Guy*, 3 *East*, 120. 1 *Strange*, 70.) 2. The assent of the executor would not aid the plaintiff here. In case of a specific legacy, the assent of the executor vests *the title* in the legatee, and he may sue at law and recover it. (1 *Strange*, 70. 8 *Coke*, 96 a. *Plowden*, 544 a. 3 *East*, 120.) But in case of a general legacy, the assent of the executor to its payment, could not give the legatee any title to a portion of the assets in the hands of a stranger. If there were a dozen strangers, each having $1000 of the assets, could the legatee maintain suits against each? 3. This defendant, however, has received no assets belonging to David Hyde's estate, and the plaintiffs have no claim upon any other. What was paid to the defendant, was only what he was entitled to receive as administrator, from the executors of Daniel Kellogg. He had no right to demand of them any portion of the $10,000, (if the plaintiffs' claim is valid,) and did not demand or receive it. 4. But if he did demand and obtain it, he did it, not as administrator, but in his

private character, and in that character only is responsible for it. As administrator of Chloe Hyde, (if the plaintiff's claim is valid,) he had no more right to the $10,000 than any other stranger, and if he demanded and obtained it, he did it in his own wrong, and cannot *for such wrong create a claim against the assets of Chloe Hyde.*

III. The plaintiffs had no power, under their charter, to execute the trust created by the legacy in question. (*Robertson* v. *Bullions*, 1 *Kernan*, 243, 254 *et seq.*) The trustees have only the power of applying the avails of the institution " from time to time to the purposes of the institution, in such way and manner *only*, and in such sums as shall be appointed and directed by the board of commissioners," mentioned in the act. (*Laws of* 1820, *p.* 198, §§ 3, 5.) How can a board so constituted administer this trust? If the commissioners direct them to invest the fund in a library instead of the endowment of a professorship, must they not do it?

*By the Court,* T. R. STRONG, J. In the case of the present plaintiffs against the present defendant and others, (18 *Barb.* 360,) we decided, after full and careful consideration, that the legacy in question, of David Hyde to the plaintiffs, was valid, and we must follow that decision in this case. But it is insisted by the defendant, that admitting the legacy to be valid, the claim made by the plaintiffs against him cannot be supported; and I am of opinion that they are not entitled to recover in this action. An essential position to the validity of the legacy is, that the residuary bequest to Chloe Hyde, to the extent of the amount of the legacy, is of the use only of the subject of the bequest, unless she should have issue living at her death; and another position connected with that, and well sustained by authority, is that it was the duty of the executor of David Hyde to retain of the estate bequeathed during the life of Chloe, the charge of a principal sum equal to the amount of the legacy, and pay over to her only the interest on the same. In *Spear* v. *Tinkham*, (2 *Barb. Ch. Rep.* 211,) the late chancellor says, " as a general rule, where there is a bequest of the whole of the

testator's personal estate, or of the residue thereof, after payment of debts and legacies, to one person for life, with a remainder over to others after the termination of such life estate therein, the whole must be converted into money, and invested in permanent securities by the executor, and the income paid over to the person entitled to the life estate. (*See also Shuler* v. *Covenhoven*, 2 *Paige*, 122, *and cases cited.*) The same principle applies where, as in the present case, the bequest is of the whole residue, limited, as to part, upon a contingency, to the use thereof for life, with a valid gift over of that part, upon the contingency, and as to the rest, absolute of the entire estate. In such a case, as to the part of the estate to which the contingency relates, the income only can be paid to the residuary legatee, but as to that portion of the estate as to which the bequest is absolute, the principal must be paid. The gift over does not attach to the whole residuary estate, so as to render the whole a security for its payment, but the executor may, as to the legatee, set apart a principal sum sufficient to discharge the gift, and proceed to satisfy the other legacies. And the residuary, or any other legatee, who has been paid his legacy, will not, in case of a subsequent deficiency of assets to pay the gift, from the waste of the executor, be obliged, for that reason, to refund any part of what he has received. (*Wolcott* v. *Hall, Bro. C. C.* 305. *Lupton* v. *Lupton*, 2 *John. Ch.* 614. *Story's Eq. Juris.* § 92.) Chloe Hyde was not therefore in her lifetime entitled to demand of the executor of her father, or of the executors of that executor, on account of the legacy to her, any thing further than the balance of the legacy, after deducting a sum sufficient to pay the contingent legacy to the plaintiffs; and the rights of her administrator are no greater than were hers. And in this view of the case, I do not perceive how the defendant can be liable to the plaintiff for the payment of the legacy, without at least an allegation, and proof, that his intestate, or himself, has received more than the intestate was entitled to receive, and of such other circumstances as would clothe him with the character of a trustee for the plaintiffs, as to the excess. But no such case is made by the complaint or the proofs. The ground on which the

counsel for the plaintiffs rests their right to recover, in relation to the point under consideration, is that Chloe Hyde, on becoming of age, was entitled to the whole fund and its increase, deducting payments made in pursuance of the will, and had the legal, although the executors of Kellogg, the executor of David Hyde, had the actual possession thereof; that she held the same in her own right, subject to a contingent trust in favor of the plaintiffs to the extent of their legacy; and that the defendant, as administrator of Chloe, is entitled to all the assets of, and responsible for all claims against, her estate, while any assets remain that may become available. It is obvious that it was with this view of the legal rights and obligations of the parties, the complaint was framed. The errors in this position are fully disclosed in the views already presented.

In my opinion the defendant is entitled to judgment on the verdict.

[MONROE GENERAL TERM, September 3, 1855. *Selden, Johnson* and *T. R. Strong,* Justices.]